IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FILED ENTERED
LODGED RECEIVED
DEC 3 2001
AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY DEPUTY

LAWRENCE E. WILLIAMS, JR. *

Plaintiff *

vs. * CIVIL NO. H-00-3779

STATE OF MARYLAND DEPARTMENT *
OF PUBLIC SAFETY AND
CORRECTIONAL SERVICES and *
WILLIAM SONDERVAN, Commissioner

DEC

Defendants *

* * * o0o * * *

MEMORANDUM OPINION

Presently confined in the Maryland Correctional Institution in Hagerstown, Maryland (the "MCI-H"), plaintiff Lawrence E. Williams, Jr., has filed a civil action in this Court under 42 U.S.C. § 1983 and under Title II of the Americans With Disabilities Act, 42 U.S.C. § 12131, et seq. (the "ADA"). Inmate Williams is a 57 year old attorney who is serving a fifteen year sentence for assaulting his wife. Named as the defendants are the State of Maryland Department of Public Safety and Correctional Services and Commissioner William W. Sondervan. In his complaint, plaintiff Williams is seeking damages and injunctive relief because defendants have failed to provide him with a kidney transplant without cost.

On behalf of defendants, the Attorney General of Maryland has

filed a motion to dismiss or for summary judgment.[1] In support of that motion, defendants have submitted a memorandum of law, declarations and various exhibits.

In opposing defendants' pending motion, plaintiff has filed a lengthy memorandum and a cross motion for summary judgment.[2] In support of those pleadings, plaintiff has submitted numerous exhibits, including a declaration executed by him. On July 31, 2001, this Court entered a Memorandum and Order directing defendants to file a reply to plaintiff's opposition and an opposition to plaintiff's motion for partial summary judgment, addressing in particular certain assertions made by plaintiff in his papers. That reply has now been filed, together with a declaration of Dr. Sharon Baucom, a physician, who is the Medical Director for the Maryland Department of Public Safety and Correctional Services. Plaintiff in turn has filed a supplemental memorandum as a response to defendants' reply to his opposition.[3]

Following its review of defendant's pending motion, plaintiff's opposition and the many pleadings, exhibits and other matters of record here, this Court has concluded that defendants'

---

[1]Since matters outside plaintiff's pleading have been presented to the Court by the parties, defendants' pending motion will be treated as a motion for summary judgment and disposed of as provided in Rule 56, F.R.Civ.P.

[2]From time to time, both plaintiff and defendants have been granted extensions for the filing of memoranda addressing issues raised by defendants' pending motion for summary judgment.

[3]Plaintiff has also recently filed a motion to compel discovery.

motion for summary judgment must be granted. The facts of record in this case establish as a matter of law that plaintiff has not pursuant to § 1983 been subjected to any constitutional deprivation by the named defendants and further that plaintiff is not entitled to a recovery from defendants under the ADA. Plaintiff's cross motion for summary judgment will accordingly be denied, as will plaintiff's motion to compel discovery.

I

Summary Judgment Principles

It is well established that a defendant moving for summary judgment bears the burden of showing the absence of any genuine issue of material fact and that it is entitled to judgment as a matter of law. Barwick v. Celotex Corp., 736 F.2d 946, 958 (4th Cir. 1984). Where, as here, the nonmoving party will bear the ultimate burden of persuasion at trial, "the burden on the moving party [at the summary judgment stage] may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

One of the purposes of Rule 56 of the Federal Rules of Civil Procedure is to require a plaintiff, in advance of trial and after a motion for summary judgment has been filed and properly supported, to come forward with some minimal facts to show that the defendant may be liable under the claims alleged. See F.R.Civ.P. 56(e). If the nonmoving party "fail[s] to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof," then "the plain language of Rule 56(c)

mandates the entry of summary judgment." Catrett, 477 U.S. at 323.

While the facts and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the party opposing the motion, Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985), "when the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "'A mere scintilla of evidence is not enough to create a fact issue; there must be evidence on which a jury might rely.'" Barwick, 736 F.2d at 958-59 (quoting Seago v. North Carolina Theaters, Inc., 42 F.R.D. 627, 640 (E.D.N.C. 1966), aff'd, 388 F.2d 987 (4th Cir. 1967), cert. denied, 390 U.S. 959 (1968)). Moreover, only disputed issues of material fact, determined by reference to the applicable substantive law, will preclude the entry of summary judgment. "Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In the absence of the necessary minimal showing by the plaintiff that the defendant may be liable under the claims alleged, the defendant should not be required to undergo the considerable expense of preparing for and participating in a trial. See Catrett, 477 U.S. at 323-24; Anderson, 477 U.S. at 256-57. Indeed, the Fourth Circuit has stated that, with regard to motions for summary judgment, the district courts have "an affirmative obligation . . . to prevent 'factually unsupported claims and defenses' from proceeding to trial." Felty v. Graves-Humphreys

Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting Catrett, 477 U.S. at 323-24).

Applying these principles to the facts of record here, this Court has concluded that defendants' motion for summary judgment must be granted and that plaintiff's cross motion for summary judgment must be denied.

II

Background Facts

In 1994, plaintiff Williams was diagnosed with End Stage Renal Disease ("ESRD"), a kidney disease. Following this diagnosis, Williams began dialysis treatments and was placed on a waiting list for a kidney transplant in the Washington Hospital Center located in Washington, D.C. Following his conviction and incarceration in 1997, dialysis treatment was continued in the correctional institutions in which plaintiff was confined. A previous § 1983 suit brought by plaintiff in this Court seeking damages and other relief against Prince George's County Detention Center and its director was dismissed by the Court's Memorandum of April 18, 1997. Williams v. Prince George's County Detention Center, et al., Civil No. H-97-1098.

Following his imprisonment, Williams was removed from the waiting list for a transplant pursuant to a federal statute which prohibited the payment of Medicare benefits to inmates. Since his incarceration, dialysis treatments have been regularly continued while plaintiff has been confined at the MCI-H. In this civil action, Williams has requested that he be examined, that he be evaluated as a kidney transplant recipient, that his name be

returned to the donor list and that he receive a kidney transplant without cost. He has been informed by the Maryland Division of Corrections that it would permit him to have a kidney transplant provided that he meet certain conditions. Defendants have required that Williams bear the cost of all expenses associated with the necessary surgery, including medical, transportation and security costs.

In this suit, plaintiff contends that the Maryland Department of Public Safety and Correctional Services should pay the costs of a kidney transplant and that he has been denied his rights under the ADA and under § 1983. Count I seeks a recovery under the ADA, and Count II has been brought under § 1983.

III

Discussion

(a)

Section 1983

To prevail in this case on his claim of inadequate medical treatment asserted under 42 U.S.C. § 1983, plaintiff must allege and prove that defendants were deliberately indifferent to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 106 (1976). To constitute deliberate indifference, the treatment rendered must be found to be so grossly incompetent, inadequate and excessive as to shock the conscience or to be intolerable to fundamental fairness. Militer v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). Mere questions of medical judgment are not subject to judicial review, and a plaintiff is not entitled to a recovery under § 1983 merely because he disagrees with his course of treatment. See

Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975). Claims involving medial malpractice or mere negligence, while actionable under state court theories of liability, are not actionable under § 1983. Donlan v. Smith, 662 F.Supp. 352, 361 (D. Md. 1986).

On the record here, this Court concludes that plaintiff has not suffered a violation of his Eighth Amendment right to adequate medical treatment during his confinement. His medical complaints have been addressed during his confinement, and he has been continually treated on a weekly basis while he has been incarcerated at the MCI-H. Several times a week he has been transported from the MCI-H to a medical facility where dialysis treatment has been afforded.[4]

It is apparent from plaintiff's assertions that he disagrees with the course of treatment which he has received during his confinement at the MCI-H. However, a mere disagreement as to proper medical treatment is not an appropriate subject for a complaint filed under § 1983. As this Court stated in Peterson v. Davis, 551 F.Supp. 137, 146 (D. Md. 1982), the "mere failure to treat all medical problems to a prisoner's satisfaction, even if that failure amounts to medical malpractice, is insufficient to support a claim under § 1983." Methods of diagnosis and choice of treatment have been held by the Fourth Circuit to be not subject to judicial review. Webster v. Jones, 554 F.2d 1284, 1286 (4th Cir.

---

[4]In a pleading filed herein by plaintiff on July 26, 2001, plaintiff stated that his dialysis days were Mondays, Wednesdays and Fridays and that he was on a dialysis machine from 10:30 a.m. until 2:30 p.m. on those days.

1977).

A claim similar to that made by plaintiff in this case was rejected by the Court in Calhoun v. Horn, 1997 W.L. 7769523 (E.D. Pa. 1997). The plaintiffs in that action had received regular dialysis treatment at the state correctional institution where they were confined. In their § 1983 action, they claimed, inter alia, that the prison's medical staff had denied them access to renal transplants. In rejecting that claim, the Court concluded that plaintiff had not shown that prison officials were "deliberately indifferent" to the prisoners' medical needs. Id. at *4; Estelle, 429 U.S. at 104. As the Court noted in Calhoun, the "mere failure to provide optimal medical care does not give rise to a constitutional violation." Id. Where a prison medical facility has provided extensive medical treatment for an inmate, deliberate indifference cannot be demonstrated. Id. at *5. As the Third Circuit noted in Inmates of the Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979), courts "afford considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients." As long as the prison provides "some care" that is adequate, there is no violation of the Eighth Amendment. Brinton v. Gaffney, 554 F.Supp. 388, 389 (E.D. Pa. 1983). A prison must provide adequate care but not the most effective medical treatment. Calhoun, at *5.

In arguing that defendants have been deliberately indifferent to his serious medical needs, plaintiff contends that the life expectancy of an individual on dialysis is ten years as compared to twenty years for an individual receiving a kidney transplant, that

kidney transplants are the preferred method of treatment for kidney failure rather than dialysis, that his life is at risk because dialysis increases the possibility of heart and blood vessel disease, that the annual death rate for individuals on kidney dialysis is approximately 23% compared to a 3% death rate following a successful transplant, and that the States of Virginia, California and Massachusetts all provide kidney transplants when requested by eligible prisoners. In support of these arguments, plaintiff relies principally on a newspaper article which appeared in The Washington Post on January 12, 1998.[5] A newspaper article of this sort hardly satisfies the requirements of Rule 56(c) that a party opposing a motion for summary judgment produce appropriate evidentiary materials. It is well established that unsworn, unauthenticated documents cannot be considered on a motion for summary judgment. Orsi v. Kirkwood, 999 F.2d 86, 92 (4th Cir. 1993).

In any event, the declaration of Dr. Baucom, the Department's Medical Director, establishes that defendants have not been deliberately indifferent to plaintiff's serious medical needs. Dr. Baucom states that the long range costs of a kidney transplant are far greater than those of regular kidney dialysis treatment because the transplant recipient must take expensive anti-rejection medications for the rest of his life. It is Dr. Baucom's opinion that a transplant is not always the preferred course of treatment even for an eligible patient because of a significant risk of

[5]Plaintiff also relies on articles appearing in several medical journals.

rejection and the side effects resulting from the necessary anti-rejection medication. According to Dr. Baucom, it is not useful to compare the life expectancy of dialysis patients with transplant recipients as a group because the group of dialysis patients includes many persons who are ineligible for transplants because of other medical problems, including heart, lung and liver disease.

There is no merit to plaintiff's contention that the medications prescribed for him to treat side effects caused by dialysis treatment have been canceled by prison physicians in an effort to reduce costs. Generic equivalents have been substituted for some medications previously prescribed for plaintiff, and defendants have not therefore discontinued treatment for side effects suffered by him.

On the record here, this Court concludes that plaintiff has not presented proof indicating that he has been subjected to cruel and unusual punishment. See Whitley v. Albers, 475 U.S. 312, 319 (1986). Defendants' conduct has not been shown to have risen to the level of "obduracy and wantonness." Id.

For these reasons, defendants are entitled to the entry of summary judgment in their favor as to Count II of plaintiff's complaint.

(b)

The ADA

Title II of the ADA provides:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied

> the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.

In Pennsylvania Department of Corrections v. Yeskey, 524 U.S. 206 (1998), the Supreme Court held that Title II of the ADA applied to inmates in state prisons. In that case, a prisoner, because of his medical history of hypertension, was refused placement in a motivational boot camp which would have led to his parole in six months. The Supreme Court concluded that the prisoner had properly alleged that he had been denied "benefits of the services" of the state prison, noting that modern prisons provide inmates with many recreational activities, medical services, education and vocational programs, all of which at least theoretically benefit the prisoners. Id. at 210. In Yeskey, the Supreme Court did not address the issue of whether the application of the ADA to state prisons was a constitutional exercise of Congress' power under § 5 of the Fourteenth Amendment. Id. at 212.

To prevail on his ADA claim in this case, plaintiff must prove: (1) that he has a disability; (2) that he is otherwise qualified for the benefit in question; and (3) that he was excluded from the benefit due to discrimination solely on the basis of his disability. Doe v. Univ. of Md. Med. Sys. Corp., 50 F.3d 1261, 1265 (4th Cir. 1995). Plaintiff maintains that because of his ESRD, he has been denied the benefit of medical services provided by the Maryland Department of Public Safety and Correctional Services.

On this record, plaintiff's claim under the ADA must fail. Plaintiff has not been denied adequate medical services because of his ESRD. Rather, he has been receiving a particular form of treatment because he is a prisoner who cannot afford the costs of a kidney transplant. Had he not been convicted, Medicare would have paid for the kidney transplant sought by plaintiff. However, provisions of Medicare do not permit such payments to be made for a state prisoner who has been found guilty of a serious crime and incarcerated.

As indicated by the record here, the State of Maryland has not been denying plaintiff medical services but rather has paid for regular dialysis treatments for his ESRD. Plaintiff's claim therefore is not that he has been denied any medical services but that he has been denied the particular medical services desired by him. There has been no showing here of discrimination, inasmuch as defendants' policy of requiring prisoners to pay for kidney transplants is applied to all prisoners who suffer from ESRD.

Viewing the facts in the light favorable to plaintiff, the Court concludes on the record here that plaintiff has not been subjected to discrimination solely on the basis of his disability. Accordingly, the Court concludes that plaintiff is not entitled to a recovery under Title II of the ADA.

As an alternative ground for granting their motion for summary judgment, defendants argue that in any event Title II of the ADA may not be applied against an entity of the State of Maryland because of the Eleventh Amendment bar against a suit brought by an

individual against a non-consenting state in federal court.[6] In Board of Trustees of the University of Alabama v. Garrett, 531 U.S. 356 (2001), the Supreme Court held that a suit by state employees against a state for money damages because of the state's failure to comply with Title I of the ADA was barred by the Eleventh Amendment. Id. at 360. The Supreme Court did not address the issue of whether or not suits against a state under Title II of the ADA were likewise barred by the Eleventh Amendment, inasmuch as the parties had not briefed that issue. Id. at 360 n.1.

The Fourth Circuit has recently had occasion to consider whether a state prisoner is barred by the Eleventh Amendment from suing a state entity under Title II of the ADA. In Amos v. Maryland Dep't of Pub. Safety & Correctional Servs., 179 F.3d 212 (4th Cir. 1999) (Amos II),[7] a panel of the Fourth Circuit in a 2-1 decision[8] held that the application of Title II of the ADA to state prisons was a constitutional exercise of Congress' Fourteenth

---

[6]In his Memorandum Opinion of April 10, 2000 entered in Wessel v. Glendening, et al., Civil No. S-99-3158, Judge Smalkin of this Court held that the ADA cannot be enforced by private litigation in a federal court against an arm of a state, given the Eleventh Amendment.

[7]In an earlier opinion, Amos v. Maryland Dep't of Pub. Safety & Correctional Services, 126 F.3d 589 (4th Cir. 1977) (Amos I), the Fourth Circuit had affirmed this Court's granting of summary judgment in favor of the defendants on the ground that the ADA did not apply to state prisons. The Supreme Court granted certiorari, vacated the judgment and remanded the case to the Fourth Circuit for consideration in light of Yeskey. 524 U.S. 935 (1998).

[8]Senior District Judge Clarke wrote the opinion, Circuit Judge Murnaghan wrote a concurring opinion and Circuit Judge Williams wrote a dissenting opinion.

Amendment enforcement powers and that Eleventh Amendment immunity was not available to the State. Id. at 222-23. However, a majority of the active judges of the Court voted to grant defendants' petition for rehearing en banc, and the Amos II judgment was accordingly vacated. Amos v. Maryland Dep't of Pub. Safety & Correctional Services, 205 F.3d 687 (4th Cir. 2000). After oral argument had been scheduled, the parties in the case reached a settlement, and the case was dismissed pursuant to Rule 42(b) of the Federal Rules of Appellate Procedure. Id. at 688.

Following its review of the pertinent authorities, this Court concludes that the Supreme Court's reasoning in Garrett is likewise applicable to an action brought by a prisoner against a state under Title II of the ADA. As noted by the Supreme Court in Garrett, the "ultimate guarantee of the Eleventh Amendment is that non-consenting states may not be sued by private individuals in federal court." Id. at 363. However, the Court had previously recognized that Congress may abrogate a state's Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority. Id. (quoting Kimel v. Florida Board of Regents, 528 U.S. 62, 73 (2000)). Thus, the Eleventh Amendment and the principle of state sovereignty which it embodies are necessarily limited by the enforcement procedures of § 5 of the Fourteenth Amendment. Id. at 354. As recognized by the Supreme Court in numerous cases, Congress may subject non-consenting states to suit in federal court when it does so pursuant to a valid exercise of its § 5 power. Id. Accordingly, the ADA can apply to the states only to the extent that the statute is

appropriate § 5 legislation.

In its analysis of the issue in Garrett, the Supreme Court first examined the scope of the constitutional right at issue by examining the limitations which § 1 of the Fourteenth Amendment places upon a state's treatment of the disabled. Id. at 365. Citing Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432 (1985), the Court concluded that states are not required by the Fourteenth Amendment to make special accommodations for the disabled "so long as their actions toward such individuals are rational." Id. at 367. The Court determined that Congress' power under § 5 is appropriate only in response to state transgressions and concluded that the legislative record of the ADA failed to show a pattern of irrational state discrimination in employment against the disabled. Id. at 368. The Court went on to say (531 U.S. at 374):

> Congress is the final authority as to desirable public policy, but in order to authorize private individuals to recover money damages against the States, there must be a pattern of discrimination by the States which violates the Fourteenth Amendment, and the remedy imposed by Congress must be congruent and proportional to the targeted violation. Those requirements are not met here, and to uphold the Act's application to the States would allow Congress to rewrite the Fourteenth Amendment law laid down by this Court in Cleburne.

Applying the principles of Garrett here, this Court concludes that, insofar as Title II of the ADA is concerned, there has similarly not been any showing of a pattern of discrimination by

the states which violates the Fourteenth Amendment. The requirements that the remedy imposed by Congress in Title II of the ADA must be congruent and proportional to the targeted violation has not been met here. Accordingly, this Court concludes that this suit brought by a state prisoner against the state under Title II of the ADA is under the reasoning of Garrett barred by the Eleventh Amendment.

For all these reasons, defendants are also entitled to the entry of summary judgment in their favor as to Count I of the complaint.

(c)

Plaintiff's Motion to Compel Discovery

After the parties had met the extended briefing schedule set by the Court and filed all supporting and responding memoranda, plaintiff filed a motion to compel discovery. That motion will be denied.

Although defendants have not formally responded to plaintiff's interrogatories, the relevant information sought by plaintiff in his interrogatories has now been supplied by way of the evidentiary materials which form a part of the record in this case. By letter dated November 29, 2001, together with attachments, counsel for defendants has now suppled the relevant information sought by plaintiff in most of his interrogatories. Other interrogatories do not seek facts which are material to the issues in the case, and defendants had no obligation to respond to those interrogatories.

IV

Conclusion

For all the reasons stated, defendants' motion for summary judgment will be granted. Since defendants are entitled to judgment as a matter of law, plaintiff's motion for summary judgment will be denied. Plaintiff's motion to compel discovery will also be denied. An appropriate Order will be entered by the Court.

Alexander Harvey II

Senior United States District Judge

DATED: December 3, 2001